# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 59812-4-II |
| Respondent, | |
| v. | |
| ANTHONY EDWARD HUFF-MCKAY, | UNPUBLISHED OPINION |
| Appellant. | |

VELJACIC, C.J. — Anthony E. Huff-McKay appeals his convictions for two counts of unlawful imprisonment, two counts of malicious mischief in the second degree, and one count of obstructing a law enforcement officer. He contends that insufficient evidence supports his convictions. We affirm.

## FACTS

### I. BACKGROUND FACTS

One evening, a large crowd gathered at an intersection in downtown Tacoma for a "street takeover[]" where drivers spin their vehicles in an intersection while blocking traffic. 2 Rep. of Proc. (RP) at 487. Traffic was blocked for approximately 15 to 20 minutes before police arrived. Spectators cheered on the drivers.

Huff-McKay was one of the spectators. As the cars did circles, Huff-McKay stood near the vehicles and filmed them. When the police arrived, Huff-McKay repeatedly shouted, "Block the cops!" Ex. 55 (20210123_182707.mp4), at 21 sec. to 31 sec. He ordered the other spectators

to "Get the fuck over here!  Block the cops!  Get the fuck over here! . . . Let's go!  Ey!  Ey!"  Ex. 55 (20210123_182707.mp4), at 34 sec. to 42 sec.  The video shows Huff-McKay and the crowd moving toward and around the police cruiser.

When Tacoma Police Officer Khanh Phan arrived, a group of at least 30 people, including Huff-McKay, converged on his patrol car.  The group quickly surrounded the car with Huff-McKay pushing toward the front.  The crowd began beating on the windows, hood, and sides of the car while shouting "pigs."  3 RP at 860.  They threw bottles at the vehicle and kicked the doors.  Phan eventually drove his vehicle forward to escape and ran over Huff-McKay who was standing in front of Phan's vehicle.

When Tacoma Police Officer Rader Cockle arrived, members of the crowd began pounding on his patrol car.  He heard objects striking the vehicle and his windows cracking amid the crowd's screaming and yelling.  He observed that Huff-McKay was on the ground, but Cockle was unable to respond because he believed he would be assaulted if he exited his vehicle.  Cockle radioed for medical assistance.  Huff-McKay was taken to the hospital and treated for his injuries.

II.    CHARGES

The State charged Huff-McKay with two counts of unlawful imprisonment involving Phan (count 1) and Cockle (count 2), two counts of malicious mischief in the second degree based on creating a substantial risk of interruption of service to the public by damaging or tampering with an emergency vehicle involving Phan (count 3) and Cockle (count 4), and one count of obstructing law enforcement (count 5).  Regarding counts 1 through 4, the State charged Huff-McKay as either a principal or an accomplice.

2

III.    TRIAL

Phan testified to what happened when he arrived on scene as set forth above.  He further testified that he felt his vehicle rocking back and forth and heard a bottle hit his window.  Phan heard liquid spilling down his window and was concerned the object was a "Molotov cocktail," a type of homemade firebomb.  3 RP at 958.  Phan was afraid for his safety and felt his life was in danger.  He worried that the mob would pull him out of his vehicle, take his weapons, and injure him.  Phan believed the crowd wanted to cause him either serious injury or death.  Huff-McKay was among the crowd gathered in front of Phan's vehicle.

Phan testified that he began reversing slowly, but he quickly realized he could not see behind him as his mirrors were blocked by people surrounding his vehicle.  Concerned that backing up could cause a collision with another car or the officer behind him, leaving them "stuck there" and giving "the crowd . . . an opportunity to attack both officers," Phan decided to proceed forward.  3 RP at 961-62.

Phan testified that as he moved forward, some people moved out of the way, but then he felt a bump and realized he may have hit someone.  Phan proceeded through the intersection and continued up a hill from where the crowd was gathered.  Once he was clear of the crowd, Phan turned around to check for injury.  As he was returning, he saw a truck approaching his vehicle at a high speed and members of the crowd chasing him on foot.  At that point, Phan chose to leave the area for his safety.  It was later confirmed that Phan had run over Huff-McKay.

Exhibit 55, which was a video taken on Huff-McKay's phone, was admitted at trial.  It shows Huff-McKay yelling, "Block the cops," the crowd responding, and Huff-McKay moving with the crowd.  Ex. 55 (20210123_182707.mp4), at 21 sec. to 31 sec.

A witness testified that that group acted in "mob fashion" as they began hitting, kicking, shaking, and yelling at the police. 2 RP at 555. Another witness testified that the crowd approached the police vehicles like a "wave." 3 RP at 890. Both witnesses testified that Phan could not have moved without potentially hitting somebody.

Tacoma Police Officer Chris Bain testified that upon arriving, he observed a large crowd moving as a single mass around Phan's vehicle, punching, kicking, and shoving it. Bain drove away from the intersection and then returned on foot and called for medical aid to respond to Huff-McKay, who was lying in the road.

Cockle testified that he was a few minutes away when he learned over his radio that Phan's patrol car was surrounded and that people were kicking it, so he proceeded to the location. Upon his arrival, individuals directed obscene gestures at him and yelled at him. The group began attacking Cockle's car, screaming "Fuck you. Fuck that cop. Fuck him. Get him. Drag him out. Kill that cop. Kill him. Pull him out." 3 RP at 1103. The group then began pulling on the top of his door frame, like they were trying to bend the window or open the door.

Cockle continued to drive toward Phan, believing he was on "an officer rescue situation." 3 RP at 1104. As he neared the intersection, Cockle saw a patrol car "go flying up the hill" and Huff-McKay lying on the ground. 3 RP at 1104. The crowd continued to swarm Cockle's vehicle, hitting it and screaming. Cockle testified that he believed he could not leave his vehicle because he would be assaulted. Since he was prevented from physically going over to Huff-McKay, he radioed dispatch to tell them there was an individual down who needed medical assistance.

Cockle attempted to leave the area but was unable to do so due to the crowd surrounding his vehicle and parked cars blocking traffic. He tried to back up but his backup camera just showed "legs and darkness." 3 RP at 1107. He was concerned that focusing on his backup camera would

4

divert his attention from his surroundings, leaving him vulnerable to an unexpected attack. Cockle felt the "crowd's goal was to kill [him]." 3 RP at 1108.

Cockle armed himself with his handgun and repeatedly announced over his loudspeaker that he would use it if the crowd failed to disperse. Despite his warnings, the crowd did not move. Cockle threatened to hit a vehicle directly in front of him if the crowd did not disperse. At that point, Cockle heard something hit his back window, shattering it. The vehicle in front of him eventually backed up enough that Cockle was able to escape.

Both Phan's and Cockle's patrol vehicles were significantly damaged. The damage to Phan's driver's side door made it difficult to open the door. And Cockle's rear window was shattered with his rifle exposed. One of the metal bars preventing access to the inside of the vehicle was bent, and footprints were discovered on the back of Cockle's vehicle. Additionally, the rear driver's side passenger window was pulled down off its track. Both vehicles had to be taken out of service due to the damage.

## IV.   MOTION TO DISMISS AND JURY INSTRUCTIONS

After the State rested and Huff-McKay elected not to present evidence, Huff-McKay moved to dismiss one count of unlawful imprisonment and the two counts of malicious mischief in the second degree based on insufficient evidence to support the charges. The trial court denied the motion.

The trial court instructed the jury on accomplice liability. The accomplice jury instruction stated:

> A person is guilty of a crime if it is committed by the conduct of another person for which he or she is legally accountable. A person is legally accountable for the conduct of another person when he or she is an accomplice of such other person in the commission of the crime.
> A person is an accomplice in the commission of a crime if, with knowledge that it will promote or facilitate the commission of the crime, he or she either:

(1) solicits, commands, encourages, or requests another person to commit the crime; or
(2) aids or agrees to aid another person in planning or committing the crime.

Clerk's Papers at 71.

V.     VERDICT AND MOTION TO ARREST JUDGMENT

The jury found Huff-McKay guilty as charged. Huff-McKay filed a motion to arrest judgment, arguing that the State provided insufficient evidence to support Huff-McKay's convictions. The trial court denied his motion.

Huff McKay appeals.

ANALYSIS

Huff-McKay contends that the evidence was insufficient to prove the elements of unlawful imprisonment, malicious mischief, and obstructing a law enforcement officer. We disagree.

"In a criminal prosecution, due process requires the State to prove every element of the charged crime beyond a reasonable doubt." *State v. Smith*, 155 Wn.2d 496, 502, 120 P.3d 559 (2005). Whether the evidence is sufficient to support a conviction is a question of constitutional law reviewed de novo. *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016).

Evidence to support a conviction is sufficient if, when viewing the evidence in the light most favorable to the State, any rational trier of fact could find guilt beyond a reasonable doubt. *State v. Bergstrom*, 199 Wn.2d 23, 40-41, 502 P.3d 837 (2022). In arguing that the evidence is insufficient, the defendant admits the truth of the State's evidence and all reasonable inferences drawn from that evidence. *Id*. at 41. Circumstantial evidence and direct evidence are considered equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). "Appellate courts defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence." *State v. Roberts*, 5 Wn.3d 222, 234, 572 P.3d 1191 (2025).

I.     UNLAWFUL IMPRISONMENT

Huff-McKay contends that the evidence is insufficient to prove that he restrained another individual. We disagree.

Under RCW 9A.40.040(1), "[a] person is guilty of unlawful imprisonment if he or she knowingly restrains another person." Restrain means to "restrict a person's movements without consent and without legal authority in a manner which interferes substantially with his or her liberty." RCW 9A.40.010(6). "Interferes substantially" means an interference that is more than "'a petty annoyance, a slight inconvenience, or an imaginary conflict.'" *State v. Dillon*, 12 Wn. App. 2d 133, 144, 456 P.3d 1199 (2020) (quoting *State v. Washington*, 135 Wn. App. 42, 50, 143 P.3d 606 (2006)).

Huff-McKay was charged as either a principal or an accomplice to unlawful imprisonment and the jury was instructed accordingly. Under RCW 9A.08.020(3)(a)(i) and (ii),

> A person is an accomplice of another person in the commission of a crime if: (a) With knowledge that it will promote or facilitate the commission of the crime, he or she: (i) Solicits, commands, encourages, or requests such other person to commit [the crime or the crime]; or (ii) Aids or agrees to aid another person in planning or committing [the crime].

A.     Officer Phan (Count 1)

Sufficient evidence supports Huff-McKay's conviction for unlawful imprisonment of Phan. When Phan arrived, a group of at least 30 people, including Huff-McKay, converged on and surrounded his patrol car, preventing movement. The crowd then beat on the car's windows, hood, sides, kicked the doors, and threw bottles. Phan testified that he could not see behind him because people were blocking his mirrors, making it unsafe to reverse. These facts show that Phan's movement was physically restricted.

The interference was significant. Witnesses described the crowd acting in "mob fashion" and approaching like a "wave." 2 RP at 555; 3 RP at 890. Phan testified he feared for his life, believing the crowd might pull him from the car, take his weapons, and seriously injure or kill him. He was effectively trapped until he drove forward to escape, despite the risk of hitting someone. This is far more than a slight inconvenience.

Huff-McKay did not merely stand by—he actively encouraged and directed the restraint, repeatedly shouting, "Block the cops!" and ordering others to gather and obstruct. Ex. 55 (20210123_182707.mp4), at 21 sec. to 31 sec. He also joined the group that surrounded Phan's vehicle. From this evidence, a jury could reasonably infer that Huff-McKay knowingly promoted or facilitated the restraint by encouraging and participating in the conduct that physically prevented Phan's movement.

B.      Officer Cockle (Count 2)

Sufficient evidence also supports unlawful imprisonment of Cockle. Upon arrival, Cockle was likewise surrounded by the crowd, who pounded on his patrol car and prevented him from exiting or moving freely. He testified he could not get out of the vehicle because he believed he would be assaulted, and he was unable to leave due to the crowd and blocked traffic. When attempting to reverse, his camera showed only "legs and darkness," confirming people were physically obstructing his path. 3 RP at 1107.

Additionally, the interference was severe. The crowd shouted threats such as "Kill that cop" and attempted to break into the vehicle, while continuing to strike it even shattering a window. 3 RP at 1103. Cockle testified he feared the crowd's goal was to kill him. He remained trapped until he threatened to ram a vehicle and ultimately forced a path to escape. This constitutes a substantial interference with liberty.

8

Even if Huff-McKay was not physically surrounding Cockle, the jury could find accomplice liability. Huff-McKay initiated and encouraged the collective effort to "block the cops," which resulted in officers—including Cockle—being surrounded and immobilized. Ex. 55 (20210123_182707.mp4), at 21 sec. to 31 sec. The crowd quickly responded to Huff-McKay's direction, surrounding the vehicle in only a few seconds. The crowd acted as a coordinated group in a continuous course of conduct against responding officers. From this, a jury could infer Huff-McKay knew his encouragement would promote or facilitate restraining officers, including subsequently arriving officers like Cockle.

For both officers, viewing the evidence in the light most favorable to the State, the evidence shows (1) physical obstruction of movement, (2) lack of consent or legal authority, and (3) substantial interference with liberty under dangerous, mob-like conditions. Additionally, Huff-McKay's active encouragement and participation support liability as either a principal or an accomplice. Therefore, a rational trier of fact could find unlawful imprisonment beyond a reasonable doubt as to both counts.

II.    MALICIOUS MISCHIEF

Huff-McKay contends that the evidence is insufficient to prove that he physically damaged an emergency vehicle. We disagree.

Under RCW 9A.48.080(1)(b), a person is guilty of malicious mischief in the second degree if they create "a substantial risk of interruption or impairment of service rendered to the public, by physically damaging or tampering with an emergency vehicle." Like the unlawful imprisonment charges, Huff-McKay was charged as either a principal or an accomplice and the jury was instructed accordingly.

A.    Officer Phan (Count 3)

Huff-McKay ordered the crowd to "Block the cops" and the crowd then began moving together. Ex. 55 (20210123_182707.mp4), at 21 sec. to 31 sec. A large group, including Huff-McKay, converged on and surrounded Phan's patrol car, then began "beating on the windows, hood, and sides," throwing bottles, and kicking the doors. 3 RP at 906. Bain likewise observed the crowd "punching and kicking and shoving" the vehicle as a single mass. 3 RP at 999. The crowd's actions rendered Phan unable to safely operate his patrol vehicle. His mirrors were obstructed by people surrounding the car, preventing him from backing up. He feared that remaining in place would allow the crowd to extract him and seize his weapons. As a result, Phan was forced to abandon normal police operations and instead drove forward through the crowd to escape. This created a substantial risk of interrupting police services and, in effect, did interrupt his ability to respond to the incident. Additionally, the damage to the vehicle—particularly to the driver's side door—further impaired its function. Ultimately, the vehicle was taken out of service.

B.     Officer Cockle (Count 4)

When Cockle arrived, the crowd again attacked a patrol vehicle, pounding on it and striking it with objects. Individuals also pulled on the top of the door frame as if trying to bend it or open the door. The attack escalated when an object struck and shattered the rear window. The vehicle sustained significant additional damage, including bent structural components and windows pulled off track. Cockle responded believing he was entering an officer rescue situation, but the crowd's conduct prevented him from performing that function. Because the crowd surrounded and attacked his vehicle, Cockle could not safely exit to render aid to Huff-McKay and instead had to radio for medical assistance. He was also unable to maneuver his vehicle due to the crowd and obstructed visibility. This evidence shows not just a risk, but an actual impairment of emergency services.

Further, the damage ultimately rendered the patrol vehicle inoperable and it was taken out of service.

Huff-McKay's earlier directives to "block the cops," combined with his participation in the crowd, support the reasonable inference that he knowingly engaged in conduct designed to interfere with police operations whether as a principle or an accomplice. Ex. 55 (20210123_182707.mp4), at 21 sec. to 31 sec.

Viewing the evidence in the light most favorable to the State, the evidence shows that Huff-McKay, at minimum as an accomplice, participated in physically damaging or tampering with emergency vehicles in a manner that created a substantial risk, and actual impairment, of public safety services. Therefore, a rational trier of fact could find malicious mischief in the second degree beyond a reasonable doubt as to both counts.

III. OBSTRUCTING LAW ENFORCEMENT (COUNT 5)

Huff-McKay contends that the evidence is insufficient to prove that he engaged in any conduct that obstructed the police. We disagree.

Under RCW 9A.76.020(1), a person is guilty of obstructing a law enforcement officer "if the person willfully hinders, delays, or obstructs any law enforcement officer in the discharge of his or her official powers or duties."

Here, Huff-McKay repeatedly shouted, "Block the cops!" and directed others, "Get the fuck over here! . . . Let's go!" Ex. 55 (20210123_182707.mp4), at 34 sec. to 42 sec. Huff-McKay, along with a large group, converged on Phan's patrol car. He then pushed his way to the front of the crowd and stood in front of Phan's vehicle. This supports coordinated action that physically impeded an officer.

Viewing the above evidence in the light most favorable to the State, Huff-McKay willfully hindered, delayed, or obstructed a law enforcement officer in the discharge of his or her official powers or duties. Therefore, a rational trier of fact could find Huff-McKay obstructed a law enforcement officer beyond a reasonable doubt.[1]

## CONCLUSION

Because sufficient evidence supports Huff-McKay's convictions for two counts of unlawful imprisonment, two counts of malicious mischief in the second degree, and one count of obstructing a law enforcement officer, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Veljacic, C.J.

We concur:

Glasgow, J.

Cruser, J.

---

[1] Huff-McKay also argues that the evidence is insufficient to prove he obstructed a law enforcement officer based on accomplice liability. Because we hold that sufficient evidence exists to support this conviction based on Huff-McKay acting as a principle, we decline to address this issue further.